1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD GATHENJI,                         CASE NO. CV-F-08-1941 LJO JLT

12              Plaintiff,                      **ORDER ON DEFENDANTS' SUMMARY**
                                                **JUDGMENT MOTION** (Doc. 24)
13        vs.

14   AUTOZONERS, LLC, and RICK TORRES,

15              Defendants.
     _____/
16

17                              **INTRODUCTION**

18        Defendants Autozoners, LLC. ("Autozone") and Rick Torres ("Mr. Torres") (collectively

19   "defendants") move for summary judgment against plaintiff Richard Gathenji ("Mr. Gathenji"). Mr.

20   Gathenji, an Autozone employee, asserts ten claims against defendants for race and national origin

21   discrimination, harassment, and retaliation. Defendants contend that the uncontroverted evidence

22   establishes that Mr. Gathenji's demotion was legitimate and based on a non-discriminatory reason; Mr.

23   Gathenji's harassment and retaliation claims fail; Mr. Gathenji failed to exhaust administrative remedies

24   as to his claims against Mr. Torres; and Mr. Gathenji is unable to pursue punitive damages. Mr.

25   Gathenji opposed the motion successfully to establish a prima facie case for discrimination, but failed

26   to establish his harassment and retaliation claims. In addition, while Mr. Gathenji exhausted

27   administrative remedies against Mr. Torres, he may not pursue exemplary damages against defendants.

28   Accordingly, this Court GRANTS in part and DENIES in part defendants' summary judgment motion.

                                            1

Autozone hired Mr. Gathenji, an African American male of Kenyan origin, on October 17, 2003. Mr. Gathenji was placed into the Manager-in-Training Program immediately. Upon completion of the Manager-in-Training Program, then district manager Dave Clark ("Mr. Clark") promoted Mr. Gathenji to store manager at Store No. 3311 on November 23, 2003. Mr. Gathenji worked as store manager until July 1, 2007, when he was demoted to parts sales manager by district manager Mr. Torres.

## Mr. Gathenji's Claims

Mr. Gathenji's discrimination, harassment, and retaliation claims arise from his treatment by Mr. Torres. Mr. Gathenji contends that his first few years as store manager passed without incident. After Mr. Torres replaced Mr. Clark as district manager in August 2005, however, Mr. Torres discriminated against and harassed Mr. Gathenji. Mr. Gathenji claims that almost immediately after Mr. Torres became district manager, Mr. Gathenji was subjected to Mr. Torres' unwarranted verbal and written reprimands; differential treatment with respect to the severity and manner of disciplinary actions imposed for similar conduct as other store managers; requirements to do extra work and complete the jobs of other employees; transfer to a different Autozone location further from his house; and being undermined by Mr. Torres in front of his employees and other district managers. Mr. Torres' discrimination and harassment culminated in Mr. Gathenji's demotion. Mr. Gathenji offers the following evidence of discrimination, harassment, and retaliation:

## Loss Prevention Audits and Reports

As store manager, Mr. Gathenji was responsible for minimizing inventory losses to theft and mismanagement. Gathenji Depo., pp. 37-38; Fonseca Decl., ¶4; Gonzalez Decl., ¶4. Mr. Gathenji's responsibilities as an Autozone store manager required him to fill out paperwork on a daily, weekly, and monthly basis and to make daily cash drops into a safe. In addition, Autozone requires store managers to pass loss prevention audits and prepare loss prevention reports.

A store manager's loss prevention performance is measured by the district manager who performs the loss prevention audit. Torres Decl., ¶6. A loss prevention audit consists of a pre-printed

---

[1]The Court relies on the evidence presented by the parties in the record and cites to the most relevant for purposes of deciding this motion.

form that is filled out by the district manager. *Id.* The loss prevention audit measures the effectiveness of the store's inventory control procedures using a number of objective and subjective factors related to paperwork control, store organization and cleanliness. The audit metrics included, among others, the store manager's next day review, money safe logs, footprints on the profit and loss statement, and overstock audit. Mr. Gathenji contends that Mr. Torres treated him differently from other store managers on his loss prevention audits and reports in a number of ways, as described below:

*Manager's Same Day Report and Loss Prevention Form*

Mr. Torres penalized Mr. Gathenji for initialing, rather than signing, his Manger's Same Day Report. Gathenji Depo., p. 118. Mr. Torres allowed other managers, including Mr. Fonseca and Mr. Gonzalez, to initial the form without incident or disciplinary action. Fonseca Decl., ¶5.

Similarly, Mr. Torres penalized Mr. Gathenji's loss prevention audit twenty points for initialing it, rather than signing it with a full signature. Gathenji Depo., p. 116. Mr. Gathenji did not penalize other district managers for initialing the report. *Id.*

*Weekly Recaps, Vendor Merchandise Reports, and Score Changes*

Mr. Torres penalized Mr. Gathenji if his weekly recaps were incomplete or not up-to-date. Gathenji Depo., p. 133. Mr. Torres signed off on other managers' weekly recap reports, however, even when they were incomplete or insufficient. Gathenji Depo., p. 131; Peraza Decl., ¶4; Hutchason Decl., ¶7; Fonseca Decl.,¶ 6; Campos Decl., ¶4. Similarly, Mr. Torres approved other managers' incomplete vendor merchandise reports, whereas he would penalize Mr. Gathenji if his vendor merchandise report was incomplete. Gathenji Depo., p. 134. Moreover, Mr. Torres would work with other store managers to fix their audits before signing off on them and asked other store managers to doctor the results to receive a passing score. Fonseca Decl.,¶ 6; Campos Decl., ¶4. Mr. Torres never extended this courtesy to Mr. Gathenji.

*Audit Visits and Advance Notice*

Mr. Torres would audit other stores every 90 days or every 60 days, but he audited Mr. Gathenji's store every month. Gathenji Depo., pp. 35-36; Torres Depo., p. 34. In addition, Mr. Torres' audit of Mr. Gathenji's store was unannounced. Mr. Torres called to forewarn other store managers, including Mr. Fonseca and Mr. Martin, that he would visit the store for a loss prevention audit. Gathenji Depo., pp.

84-85, 136-37; Peraza Decl., ¶5. Mr. Torres' phone calls allowed Phillip Fonseca ("Mr. Fonseca") and Martin Gonzalez ("Mr. Gonzalez") to prepare the store for the audit. Mr. Torres also called Sandra Fonseca to give notice of his audit. Gathenji Depo., p. 137; S. Fonseca Decl., ¶¶3-4. Mr. Gathenji never received a phone call from Mr. Torres prior to an audit. *Id*.

Mr. Gathenji claims that Mr. Torres also pre-informed multiple district managers that regional district manager Phil Lester would be visiting the region for a check-up. Mr. Gathenji reports that all of the store managers he spoke with–Joanne Grove, Patrick Ray, and Rudy Rosetta–told him that Mr. Torres gave them advanced notice that Mr. Lester would be coming to the district. Gathenji Depo., p. 107. Mr. Gathenji received no such notice.

*Overstock*

Mr. Torres penalized Mr. Gathenji if one item out of 100 boxes of items was out of place. Gathenji Depo., pp. 76-79, 87-88, 124-25. Mr. Fonseca and Mr. Gonzalez, however, were never penalized by Mr. Torres notwithstanding the fact that their overstock areas were more disorderly than Mr. Gathenji's overstock area. Gathenji Depo., p. 125.

*Inventory Matrix*

Mr. Gathenji was treated differently with regard to completing the inventory matrix. Generally, Mr. Torres allowed any member of management to complete the inventory matrix, including assistant managers. Huchason Decl., ¶8. As such, Keith Huchason ("Mr. Huchason"), an assistant manager who worked under Mr. Hernandez, was allowed by Mr. Torres to complete the inventory matrix for Mr. Hernandez. *Id*. When Mr. Huchason was employed under Mr. Gathenji, however, Mr. Torres required Mr. Gathenji to complete the inventory matrix. *Id*. Mr. Torres never allowed Mr. Huchason to complete the inventory matrix for Mr. Gathenji. *Id.*

**Staffing Issues**

*Insufficient Staff*

According to Mr. Gathenji, Mr. Torres harassed and discriminated against Mr. Gathenji in terms of his staff. Mr. Torres repeatedly denied Mr. Gathenji's requests for additional help or additional hours. Gathenji Depo., pp. 90-93. Mr. Torres approved other managers to get help from extra staff members when they met the "1 for 100" store sales quota; however, Mr. Gathenji was never approved for extra

4

help on the many occasions he met that quota. Gathenji Depo., p. 88. In addition, Mr. Torres regularly approved other store managers' requests to give their part-time employees extra hours during high sales weeks, but always denied Mr. Gathenji's requests to grant additional hours to his employees. Gathenji Depo., p. 90. Rather than provide more help, Mr. Torres required Mr. Gathenji to cut the hours of his employees during high sales weeks. *Id*. Under Mr. Clark's supervision, Mr. Gathenji sometimes received help for his store; under Mr. Torres' supervision, Mr. Gathenji never received extra help. *Id*.

*Transferring employees*

Mr. Torres transferred two parts sales managers to Mr. Gathenji's store after those employees received notices that their employment would be terminated. Gathenji Depo., p. 140. This was against procedure and Mr. Torres did not transfer any such employees to any other store. *Id*.

*Insufficient Training Time*

Mr. Torres allowed Mr. Gathenji only 24 hours to train a parts sales manager. Gathenji Depo., p. 140. No other district manager was given that short time frame to train a parts sales manager. *Id*.

**Standards of Cleanliness**

Mr. Gathenji was forced to transfer some of his employees to others stores that were in a "deplorable condition" to clean them up. Gathenji Depo., p. 87. Mr. Gathenji's store was never in such poor condition. *Id*. Nevertheless, Mr. Torres' standards for cleanliness for Mr. Gathenji's store was much higher that those for other store managers. *Id*. at 87-88. Sometimes, Mr. Torres required Mr. Gathenji to clean other stores personally. *Id*.

**Management Meetings**

*Attendance*

Mr. Torres never excused Mr. Gathenji from attending meetings. Gathenji Depo., p. 101. Mr. Gathenji was required to attend management meetings and request permission to leave early to pick up his daughter. *Id*. When he did request, Mr. Torres did not grant Mr. Gathenji permission to leave early to pick up his daughter from day care. Mr. Gathenji was unable to find someone else to pick up his daughter, and he was late. *Id*. at 101-02.

By contrast, Mr. Torres excused other store managers from attending the management meetings. David Hernandez ("Mr. Hernandez") never attended personally a management meeting from 2006

through June 2007. Gathenji Depo., p. 98. Sometimes, Mr. Hernandez would appear telephonically to these meetings, but his attendance was irregular. *Id.* Mr. Torres also excused Mr. Fonseca and Mr. Gonzales from attending management meetings.

*Belittling Mr. Gathenji*

Sandra Fonseca ("Ms. Fonseca"), a former Autozone store manager, witnessed Mr. Torres "verbally abuse" Mr. Gathenji. S. Fonseca Decl.,¶ 8. During management meetings, Mr. Torres would belittle Mr. Gathenji by telling him that he was too slow and that his sales were not good. *Id.* Additionally, Mr. Torres spoke to Mr. Gathenji in a condescending manner. *Id.*

George Campos ("Mr. Campos"), another former Autozone store manager, also witnessed Mr. Torres' treatment of Mr. Gathenji at management meetings. According to Mr. Campos, Mr. Torres unfairly criticized Mr. Gathenji at store manager meetings. Campos Decl., ¶¶1-3. Mr. Torres belittled Mr. Gathenji despite his "well-kept store and high sales." *Id.* Other store managers, with fewer sales, were never belittled by Mr. Torres. *Id.*

**Nasty Comment**

Mr. Torres made a "nasty comment" about Mr. Gathenji's family photograph to Mr. Gathenji's assistant, Ashley Davis ("Ms. Davis"). Gathenji Depo., p. 147. Ms. Davis refused to tell Mr. Gathenji the substance of the nasty comment. *Id.* Mr. Gathenji took his family photograph home after Mr. Torres made the nasty comment. *Id.*

**Demotion**

Mr. Gathenji contends that although other stores had more shrink and less sales, he was demoted while other district managers were allowed to keep their positions. Gathenji Depo., p. 139. Although Mr. Torres transferred three other district managers to different stores who experienced performance issues, Mr. Torres demoted Mr. Gathenji. *Id.*

In addition, Mr. Gathenji disputes the reasons for his demotion. Mr. Gathenji contends that although Mr. Torres penalized Mr. Gathenji for "lack of store growth," there was clear store growth as documented by published quarterly and monthly statistical reports. Huchason, Decl., ¶9.

**Post-demotion Complaints**

After Mr. Gathenji was demoted, Mr. Gathenji complained to Autozone's Employee Relations

Department and Regional Sales Manger about his treatment. Gathenji Depo., p. 138-39. Mr. Gathenji explained to Veronica Mora and Mr. Lester how he was treated differently. *Id.* Mr. Gathenji pointed out that other managers with performance issues–including those with significantly lower performance standards–were not demoted, while Mr. Gathenji was. *Id*. Mr. Gathenji's complaints were dismissed without action, and Mr. Gathenji remained demoted. *Id*.

Mr. Gathenji filed a complaint of discrimination with California's Department of Fair Employment and Housing ("DFEH") on September 11, 2007. On September 10, 2008, DFEH issued Mr. Gathenji a right-to-sue notice.

### Current Employment

Mr. Gathenji continues to be employed at Autozone.

### **Defendants' Opposition**

Defendants argue that Mr. Gathenji was demoted for a non-discriminatory purpose. Defendants assert that after several performance issues, corrective actions and placement into a Performance Improvement Plan, Mr. Gathenji was demoted based on his continued failure to improve his performance. In addition, defendants contend that Mr. Gathenji was demoted because he failed to protect his store's assets. To support these assertions, defendants offer the following evidence:

### Poor Performance

Defendants contend that Mr. Gathenji's claims are primarily based on the fact that Mr. Torres gave him poor scores on his loss prevention audits and discipline. Defendants argue out that Mr. Gathenji's adverse employment action was caused by his poor performance. Defendants point out that corrective measures were taken to improve Mr. Gathenji's performance prior to the demotion.

### *Corrective Actions*

Defendants submit that Mr. Gathenji received five corrective actions for job performance related issues from October 10, 2006 until his July 1, 2007 demotion. These corrective actions took place on the following dates and for the following reasons (Torres Decl., ¶¶15-24, Exhs. A-M):

- October 10, 2006: Mr. Gathenji scored 49% on his loss prevention audit for a second consecutive time. A passing score is 85%.
- February 8, 2007: Autozone noted that Mr. Gathenji violated his loss prevention duties by

1         failing to secure a money drop.

2 •     February 9, 2007:     Mr. Gathenji received a loss prevention audit score of 63%.

3 •     April 20, 2007:     Mr. Gathenji received a loss prevention audit score of 69%.

4 •     May 11, 2007:     Mr. Gathenji failed to maintain store merchandise properly.

5 Although Mr. Gathenji had an opportunity to do so, Mr. Gathenji failed to comment on his audits.

6 *Performance Improvement Plan*

7     On March 28, 2007, Autozone placed Mr. Gathenji on a Performance Improvement Plan.

8 Autozone gave Mr. Gathenji several dates by which to improve in deficient areas. Gathenji Depo., pp.

9 157-58; Torres Decl., ¶19, Exh. F.  Autozone contends that Mr. Gathenji failed to improve after

10 placement on the performance improvement plan.

11 *Demotion*

12     Mr. Torres demoted Mr. Gathenji to parts sales manager because he failed loss prevention audits

13 and continued to perform poorly in his responsibilities.  Torres Decl., ¶23.

14 **Post-Demotion Vacation**

15     Following his demotion, Mr. Gathenji improperly cashed out a week of his vacation pay by

16 scheduling "vacation" to occur on his normally occurring weekends. Torres Decl., ¶24; Exhs. L, M;

17 Gathenji Depo., pp. 158-59.

18 **Non-disparate Treatment**

19     Mr. Torres contends that he audited each Autozone store and treated all store manager fairly.

20 *Management Meetings*

21     Mr. Torres admits that from time to time, a manager was absent from one of the management

22 meetings. Torres Decl., ¶5. Mr. Torres declares, however, that when a manager was absent, that manager

23 would provide Mr. Torres with advance notice of the absence and an acceptable excuse. *Id*.  Mr. Torres

24 submits that Mr. Hernandez had a medical excuse for missing meetings during the relevant period. *Id*.

25     Mr. Gathenji responds that he is aware of more than one instance in which a manager was allowed

26 to miss a meeting without excuse and without disciplinary consequences from Mr. Torres. Gathenji

27 Depo., pp. 97, 102, 103.  Moreover, Mr. Gathenji maintains that even when he had an acceptable excuse,

28 such as the need to pick up his child, Mr. Torres denied Mr. Gathenji's request. *Id*.

Mr. Torres points out that he previously demoted Mr. Fonseca from store manager to parts sales manager for poor performance. Torres Decl., ¶21.

*Loss Prevention Audits*

Mr. Torres required all managers to pass loss prevention audits and to maintain the security of their cash deposits. Torres Decl., ¶14; Fonseca Decl., ¶4; Gonzales Decl., ¶4. Both Mr. Gonzales and Mr. Fonseca have lost points for failing to do adequate weekly recaps on occasions in the past. Torres Decl., ¶¶7-8; Fonseca Decl., ¶¶5-6; Gonzales Decl., ¶¶5-6.

Mr. Torres further contends that he performed loss prevention audits at regular intervals at all stores. Torres Decl., ¶¶10-12.

## **Procedural History**

Mr. Gathenji initiated this action on December 19, 2008. Proceeding on his amended complaint filed September 21, 2009, Mr. Gathenji asserts the following causes of action against defendants:

1. Race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2. ("Title VII");

2. National origin discrimination in violation of Title VII;

3. Harassment in violation of Title VII;

4. Retaliation in violation of Title VII;

5. Race discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981;

6. Race discrimination in violation of California Government Code §12940 ("FEHA")

7. National origin discrimination in violation of California's FEHA;

8. Failure to Prevent in violation of FEHA;

9. Harassment in violation of FEHA; and

10. Retaliation in violation of FEHA.

Defendants moved for summary judgment on December 18, 2009 and set a hearing date for March 10, 2010. Mr. Gathenji opposed the motion on February 24, 2010. Defendants failed to file a timely reply. This Court found this motion suitable for decision without a hearing, vacated the March 10, 2010 hearing pursuant to Local Rule 230(g), and issues the following order.

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed. R. Civ. P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor, but "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts showing that there is a genuine issue for trial." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

## DISCUSSION

### Federal and State Discrimination

Mr. Gathenji asserts multiple federal and state discrimination claims: (1) race discrimination in violation of Title VII (first cause of action); (2) national origin discrimination in violation of Title VII (second cause of action); (3) race discrimination in violation of 42 U.S.C. §1981 (fifth cause of action)[2]; (4) race discrimination in violation of California's FEHA (sixth cause of action); and (5) national origin discrimination in violation of FEHA (seventh cause of action).  Both Title VII and FEHA prohibit discrimination against individuals in the workplace on the basis of race and national origin.  42 U.S.C. §2000e-2; Cal. Gov. Code §§12940(a)-(d).  In addition, both federal and California courts analyze indirect or circumstantial discrimination claims under the shifting burden of proof framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), and reaffirmed in *St Mary's Honor Center v. Hicks & Co.*, 509 U.S. 502, 113 S.Ct. 2742(1993).  *See*, *Caldwell v. Paramount Uni. Sch. Distr*., 41 Cal. App. 4th 189, 200 (1995) (applying a *McDonnell Douglas* analysis to discrimination under California's FEHA); *Mixon v. Fair Employment and Housing Comm'n*., 192 Cal. App. 3d 1306, 1316 (1987) ("While the California act and title VII differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of the state statute.")

Under the burden-shifting framework of Title VII and FEHA, Mr. Gathenji must establish a prima facie case of discrimination in the workplace by demonstrating that he: (1) was a member of a protected class; (2) performed his job in a competent manner; (3) suffered an adverse employment action; and (4) the action occurred under circumstances suggesting discriminatory motive (i.e. person outside of the protected class was treated more favorably). *McDonnell Douglas*, 411 U.S. at 802; *Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 917 (9th Cir. 1996), *cert. denied*, 118 S.Ct. 369 (1997); *Caldwell*, 41 Cal. App. 4th at 200; *Mixon*, 192 Cal. App. 3d at 1319 (applying *McDonnell Douglas* factors).

If Mr. Gathenji establishes his prima facie case, the burden shifts to Autozone to rebut the

---

[2] The parties' arguments focus on Mr. Gathenji's Title VII and FEHA claims; neither party discussed Mr. Gathenji's Civil Rights Act of 1866, 42 U.S.C. §1981 claim.  Having failed to discuss the law on this claim, and because the court evaluates 42 U.S.C. §1981 claims the same as Title VII claims, *Manatt v. Bank of America,* 339 F.3d 792 (9th Cir. 2003), defendants failed to establish that they are entitled to judgment as a matter of law on Mr. Gathenji's fifth cause of action.

presumption of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Autozone may rebut the presumption by producing evidence of a legitimate, non-discriminatory reason for its actions. *Id.*; *Nidds*, 113 F.3d at 917. This burden of production is less than the burden of proving the absence of a discriminatory motive, since the burden of proving the cases rests with Mr. Gathenji. *Nidds*, 113 F.3d at 916-17; *Clark v. Claremont University Center*, 6 Cal. App. 4th 639, 663-64 (1992).

If Autozone meets its burden, the presumption of discrimination raised by the prima facie case "simply drops out of the picture." *St. Mary's*, 113 S.Ct. at 2747. The burden shifts back to Mr. Gathenji to establish that Autozone's stated reasons for the adverse employment action was pretext for unlawful discrimination. *Id.*; *Bradley v. Harcourt, Brace, and Co.*, 104 F.3d 267, 270 (1996). Mr. Gathenji must provide "specific, substantial evidence" that the reasons given were a pretext for discrimination. *Bradley*, 104 F.3d at 270. Mr. Gathenji may establish pretext if there is an absence of documentation confirming the employer's employment decisions. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004). In addition, Mr. Gathenji must provide evidence that his protected class "actually played a role" and "had a determinative influence" on his demotion. *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993); *Mixon*, 192 Cal. App. 3d 1306, 1317 (1987) (plaintiff must prove that there was a "causal connection" between the protected status and the adverse employment decision). Ultimately, at this stage, the "factfinder must decide upon all of the evidence before it whether defendant intentionally discriminated against plaintiff." *Mixon*, 192 Cal. App. 3d at 1319 (citing *U.S. Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478 (1983)). "In short the trier of fact decides whether it believes the employer's explanation of its actions or the employee's." *Id*.

**Mr. Gathenji's Prima Facie Case**

*Protected Class*

Mr. Gathenji undisputedly is a member of a protected class under the definitions of both race and national origin. "Race" is interpreted broadly to mean classes of persons identifiable because of their ancestry or ethnic characteristics. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 612-13 (1987). "National origin" is defined as the country where a person was born, or, more broadly, the country from which the plaintiff's ancestors came. *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88-89 (1973). National origin discrimination includes the denial of equal employment opportunities because of an

individual's actual or ancestral place of origin. 29 C.F.R. §1606.1. Mr. Gathenji is an African American man who is of Kenyan national origin. Accordingly, Mr. Gathenji was a member of a protected class for purposes of race discrimination and national origin discrimination.

*Performed in Competent Manner*

Defendants argue that Mr. Gathenji's "performance was so poor...that Autozone could have terminated him with ample justification." Def. Memo., p. 6. To support the argument, however, defendants rely on unsupported or irrelevant facts. Defendants argue that Mr. Gathenji "failed to make a $300 cash deposit forcing Torres to search his store on his hands and knees to find the lost deposit" and Mr. Gathenji "failed a walk-through by the regional manager about whom Plaintiff has no complaint." *Id*. Defendants fail to support these assertions, however, with citations to the record and these facts are not contained in defendants' statement of facts. Moreover, defendants argue that Mr. Gathenji performed incompetently because he cashed out five vacation days on his regular days off. Whether Mr. Gathenji took vacation days during his regularly scheduled weekends *after* he was demoted to parts sales manager is inapposite to whether Mr. Gathenji worked competently as a store manager. Thus, defendants fail to establish that Mr. Gathenji worked incompetently as a store manager before he was demoted.

In addition, and based on the evidence, this Court rejects defendants' argument that Mr. Gathenji's loss prevention audit failures establish conclusively his poor job performance. Mr. Gathenji presents evidence that Mr. Torres gave other store managers passing scores even if their overstock was completely disorganized and the paperwork was incomplete or missing. Gathenji Decl., ¶5; Hutchason Decl., ¶¶6-8; Peraza Decl., ¶¶4-5. Mr. Torres corrected and completed other store managers loss prevention report, but did not do so for Mr. Gathenji. Peraza Decl., ¶¶1-3. Mr. Gathenji presented evidence that demonstrates, if viewed in a light most favorable to Mr. Gathenji, that Mr. Torres held Mr. Gathenji to higher standards than other district managers, set up Mr. Gathenji for failure by controlling staffing issues, and deducted points from Mr. Gathenji in an unfair manner. Two former store managers declare that Mr. Torres allowed them to fix errors on the audit report before he signed off, or that he signed off on their reports even if they were incomplete or insufficient. Accordingly, there are questions of fact as to whether Mr. Gathenji's loss prevention audit failures objectively establish that Mr. Gathenji failed to perform as a store manager competently.

Mr. Gathenji asserts that he performed his duties competently and professionally while employed at Autozone, and became a valued member of Autozone's organization. Mr. Gathenji points out that for years, Mr. Gathenji worked as an Autozone store manager without incident. Mr. Gathenji did not have alleged performance issues until Mr. Torres became the district manager. In addition, Mr. Gathenji argues, despite Mr. Torres' attempts to harass, discrimination against, and retaliate against Mr. Gathenji, Mr. Gathenji is still employed by Autozone.

Mr. Gathenji acknowledges that corrective actions were taken against him before he was demoted, but contends that Mr. Torres unfairly scored his loss prevention audits. A store manager's loss prevention performance is measured by the district manager who performs the loss prevention audit. Torres Decl., ¶6. Thus, Mr. Gathenji argues that he failed his loss prevention audited based of Mr. Torres' discriminatory actions, not because of his poor performance. Mr. Gathenji reports that these loss prevention audit "failures" include missing signatures on otherwise-completed paperwork lack of verification on completed special orders. Mr. Gathenji claims that Mr. Torres failed him if there was one single misplaced item in over 100 boxes of overstock.

Based on the evidence presented and the argument of the parties, this Court finds that Mr. Gathenji establishes that he worked as a store manager competently for purposes of this motion. Mr. Gathenji presents evidence that Mr. Gathenji worked at the same level or better than other store managers in the district who were not disciplined for their performance. In addition, there questions of fact as to whether the loss prevention audits are an objective measure of job performance and whether Mr. Torres' evaluation of Mr. Gathenji was objective. Accordingly, Mr. Gathenji carries his burden on this element of his prima facie case.

*Adverse Employment Action*

Autozone undisputedly demoted Mr. Gathenji from store manager to parts sales manager. To establish this element, Mr. Gathenji must show a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Michael v. Caterpillar Fin'l Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Demotion is an example of an adverse employment action. *Id*. Because Mr. Torres demoted Mr. Gathenji, Mr. Gathenji establishes that he experienced an adverse employment action.

14

*Discriminatory Motive*

Mr. Gathenji establishes discriminatory motive by presenting evidence that "others not in [his] protected class were treated more favorably." *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993). As set forth above, Mr. Gathenji presents evidence that other district managers who were not African-American or of Kenyan origin (he was the only store manager who was African-American and of Kenyan ethnic origin) were treated more favorably. First, Mr. Gathenji presented evidence that Mr. Torres treated other store managers more favorably on the loss prevention audits. According to Mr. Gathenji's evidence, Mr. Torres gave advance notice to store managers of the audits and scored the audits more favorably in a number of areas. Mr. Torres held Mr. Gathenji to a higher standard for orderliness. In addition, Mr. Torres treated Mr. Gathenji differently on staffing issues and refused to excuse Mr. Gathenji from attending management meetings. Mr. Torres disputes Mr. Gathenji's evidence; however, in a summary judgment motion for discrimination, the Court must evaluate the facts in a light most favorable to the plaintiff and must resolve factual disputes in favor of the non-moving party. Chuang v. University of California Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000). Based on the evidence presented, Mr. Gathenji establishes that others not in his protected class were treated more favorably.

### Defendants' Purported Non-Discriminatory Reasons for Action

Having presented evidence to satisfy each element, Mr. Gathenji establishes a prima facie case for federal and state discrimination based on race and national origin. The burden shifts now shifts to Autozone to rebut the presumption of discrimination. *McDonnell Douglas*, 411 U.S. at 802.

Defendants satisfy their burden to rebut the presumption. Defendants present evidence that Mr. Gathenji's demotion was legitimate. Defendants point to the uncontroverted evidence that Mr. Gathenji received failing marks on five loss prevention audits. Defendants placed Mr. Gathenji on a performance improvement plan to give him additional time to improve. Mr. Gathenji was demoted after he continued to fail his loss prevention audits after being placed on the performance improvement plan. Mr. Gathenji does not oppose defendants' contention that based on the evidence, defendants carry their burden to establish that Mr. Gathenji was demoted for a legitimate business purpose based on his poor performance.

### Plaintiffs' Argument of Pretext

Because Autozone rebutted the presumption of discrimination, the burden shifts back to Mr.

Gathenji to establish that Autozone's stated reasons for the adverse employment action was pretext for unlawful discrimination. *Bradley*, 104 F.3d at 270. Mr. Gathenji may establish "pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127 (citing *Godwin v. Hung Wesson, Inc.*, 150 F.3d 1217,1220-21 (9th Cir. 1998)). Mr. Gathenji must provide "specific, substantial evidence" that the reasons given were a pretext for discrimination. *Bradley*, 104 F.3d at 270. In addition, Mr. Gathenji must establish that there was a causal connection between his protected status and the adverse employment action. *Mixon*, 192 Cal. App. 3d at 1317.

To oppose this motion, Mr. Gathenji need only show that the "claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona*, 391 U.S. at 290. At this stage, Mr. Gathenji must "go beyond the pleadings ...[to] designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "A disparate treatment plaintiff can survive summary judgment without producing any evidence beyond that constituting his prima facie case, if that evidence raises a general issue of material fact regarding the truth of the employer's proffered reasons." *Chang*, 225 F.3d at 1127 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)). If Mr. Gathenji demonstrates through specific evidence that a genuine issue of material fact exists, defendants' summary judgment motion must be denied.

Mr. Gathenji establishes that a genuine issue of fact exists as to his discrimination claims. Mr. Gathenji has shown through his deposition and declarations that store managers not in Mr. Gathenji's protected class had the same sort of performance issues (failure to sign documents, overstock disorganization, incomplete paperwork) but were not demoted. Mr. Gathenji raises issues of material fact as to whether Mr. Torres scored Mr. Gathenji's loss prevention audits similarly to how he scored the loss prevention audits of those not in Mr. Gathenji's protected class, suggesting pretext for the demotion. Mr. Gathenji raises questions of fact regarding the causal connection between his protected classes and the demotion, because of Mr. Torres' alleged "nasty comment," and the disparate treatment between Mr. Gathenji and others. To resolve discrimination claims at this stage, the "factfinder must decide upon all of the evidence before it whether defendant intentionally discriminated against plaintiff." *Mixon*, 192 Cal.

App. 3d at 1319. The trier of fact at trial must determine "whether it believes the employer's explanation of its actions or the employee's." *Mixon*, 192 Cal. App. 3d at 1319. In a Fed. R. Civ. P. 56 motion, however, this Court does not resolve factual issues. *Chuang*, 225 F.3d at 1124 (ultimate question of employment discrimination is conducted most appropriately by a factfinder, not on summary judgment). Because Mr. Gathenji presents evidence to oppose Mr. Gathenji has satisfied his burden to establish that a question of material fact exists as to these claims. Accordingly, defendants' summary judgment motion is denied as to these claims.

### Federal and State Harrassment

Mr. Gathenji claims harassment in violation of Title VII (third cause of action) and FEHA (ninth cause of action). California's FEHA "explicitly prohibits an employer from harassing an employee on the basis of race...or ethnicity." *Dee v. Vintage Petroleum, Inc.*, 106 Cal. App. 4th 30, 35 (2003) (internal citations omitted). Harassment includes "epithets, derogatory comments or slurs." *Id.* "California Courts have been guided in their interpretations of FEHA by federal court decisions interpreting Title VII of the federal civil rights act." *Id.* To prevail on his Title VII hostile work environment claim, Mr. Gathenji must show that his "workplace was permeated with discriminatory intimidation...that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 921 (2000)*; Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). "The working environment must be both subjectively and objectively perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). The Court considers the totality of the circumstances to determine whether a plaintiff makes out a colorable claim of hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

A harassment claim is distinct from a claim of discrimination. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009). Pursuant to FEHA, "discrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Id.* at 707. Thus, "harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Id.* (emphasis in original). Harassment includes:

> verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances...[H]arassment consists of a type of conduct not necessary to perform a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory's employee's job.

*Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 63 (1996); *see also*, Cal. Admin. Code, Title 2, sec. 7287.6(b)(1). Thus, unlike a claim for discrimination, a harassment claim concerns actions "outside the scope of job duties which are not of a type necessary to business and personnel management." *Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998).

Mr. Gathenji bases his harassment claims on conduct that is within the scope of Mr. Torres' job duties. Mr. Gathenji does not dispute that his harassment claim is based primarily on the fact that Mr. Torres gave him poor scores on his loss prevention audits and discipline. Pl. Separate Statement of Facts, Fact No. 32. Mr. Gathenji asserts that Mr. Torres' harassment created a hostile work environment for him at Autozone, because he unfairly penalized him. Specifically, Mr. Gathenji argues that Mr. Torres harassed him when he was demoted him for "lack of store growth" notwithstanding the fact that there was significant growth in Mr. Gathenji's store during the relevant time period. Moreover, Mr. Gathenji claims that on several occasions, Mr. Torres verbally abused, belittled, and criticized Mr. Gathenji in the presence of the other store managers. The alleged verbal abuse related to Mr. Torres's comments about Mr. Gathenji's store performance made at management meetings. While these allegations may be found discriminatory if based on improper motives, they do not state a claim for harassment:

> [C]ommonly necessary personnel management actions such as hiring and firing, *job or project assignments*, *office or work station assignments*, promotion or *demotion*, *performance evaluations*, *the provision of support*, the assignment or nonassignment of supervisory functions, *deciding who will or who will not attend meetings*, deciding who will be laid off, and the like do not come within the meaning of harassment.

*Reno*, 18 Cal. 4th at 647-58 (emphasis added). Mr. Gathenji's allegations of demotion, staffing issues, performance evaluations, loss prevention audit scoring, and criticism about job performance fall squarely within this exclusion. Accordingly, this conduct does not constitute harassment as a matter of law. *See*, *Valente-Hook v. Eastern Plumas Health Care*, 368 F. Supp. 2d 1084 (E.D. Cal. 2005) (plaintiff fails to establish prima facie harassment claim when incidence fall within scope of job duties).

Additionally, Mr. Gathenji fails to establish that the conduct was "sufficiently severe or pervasive

to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Meritor Savings Bank*, 477 U.S. at 67. To determine whether a work environment is "sufficiently hostile," the Court looks "at all of the circumstances" including: "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*, 510 U.S. at 23). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc*, 523 U.S. 75, 80 (1998)). The conduct Mr. Gathenji finds harassing–the "nasty comment," the condescending tone, and the comments about work performance– may be offensive, but is not considered reasonably or objectively to be "extreme" conduct that rises to the level of harassment under the federal and state statutes. The "sporadic use of abusive language" or "occasional teasing" is part of the "ordinary tribulations of the work place," and is not actionably severe or pervasive. *Id*.; *Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 464 (1998) (Under FEHA, court will "filter out complaints attacking the ordinary tribulations of the workplace"); *see also, Hughes v. Pair*, 46 Cal. 4th 1035, 1049 (2009) ("harassing conduct must consist of more than a few isolated incidents").

Mr. Gathenji's harassment claim is based on conduct that Mr. Torres performed within the scope of his job duties as Mr. Gathenji's supervisor. The demotion, loss prevention audit scores, and statements about Mr. Gathenji's performance at management meetings constitute conduct related to business and personnel management. As such, the conduct does not fall within the meaning of harassment. In addition, the conduct is not as pervasive or severe as to reach the level of harassment by reasonable, objective standards. Accordingly, defendants are entitled to summary adjudication in their favor on Mr. Gathenji's harassment claims.

## Retaliation

Mr. Gathenji asserts claims for retaliation in violation of Title VII (fourth cause of action) and FEHA (tenth cause of action). To establish a prima facie case of retaliation under state and federal law, Mr. Gathenji must prove that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse

employment action. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (Title VII); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000) (FEHA).

Based on these standards, Mr. Gathenji must establish that he suffered an adverse employment action that was caused by a "statutorily protected expression." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir. 1983). The "protected activity" in a retaliation case refers to an employee's statement that is "opposed to an unlawful employment practice." *Id.* Mr. Gathenji undisputedly complained about the alleged unlawful employment practices, and filed his DFEH complaint, *after* the adverse employment action. Based on the undisputed evidence, Mr. Gathenji fails to establish a causal link between the adverse employment action and the protected activity, and his retaliation claims fail. Because Mr. Gathenji fails to establish a prima facie case for his retaliation claims, defendants are entitled to summary adjudication in their favor on Mr. Gathenji's retaliation causes of action.

**Failure to Prevent**

Defendants' failure to prevent (eighth cause of action) argument is based on their position that Mr. Gathenji's discrimination and harassment claims fails. Defendants argue that Mr. Gathenji's failure to prevent harassment and discrimination claims fail because Mr. Gathenji "has not established that he suffered harassment or discrimination." To the extent that Mr. Gathenji successfully opposed summary adjudication of his discrimination claims, defendants' argument fails. While Mr. Gathenji may not pursue a failure to prevent harassment claim, Mr. Gathenji has established that triable issues of material fact exist on his discrimination claims, including failure to prevent.

**Failure to Exhaust**

Defendants contend that Mr. Gathenji's claims against Mr. Torres fail because Mr. Gathenji failed to exhaust his administrative remedies against Mr. Torres. To raise FEHA claims against Mr. Torres, Mr. Gathenji must exhaust administrative remedies. "To allow a complainant to sue individuals in a state court against a FEHA cause of action without having brought them into the scope of the comprehensive administrative process by naming them as perpetrators of discrimination at the outset would undermine the purposes of the fair employment statute." *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal. App. 4th 1505, 1514 (1996). In Mr. Gathenji's DFEH complaint, he names Autozone as the "employer, person....who discriminated against me" in the caption line. Def. RJN, Ex. A. Defendants argue that

because Mr. Torres was not "named in" the caption of the DFEH complaint, Mr. Gathenji failed to exhaust his administrative remedies as to him, and all claims against Mr. Torres fail.

California's administrative remedy exhaustion requirement is not as rigid as defendants submit. "The function of an administrative complaint is to provide the basis for the investigation into an employee's claim of discrimination against an employer, and not to limit access to the courts." *Cole*, 47 Cal. App. 4th. at 1515. Thus, the exhaustion requirement is met if a party has "been named in the caption or body of the DFEH charge." *Id*.

Mr. Gathenji satisfied FEHA's exhaustion requirement. Although he did not name Mr. Torres in the caption, Mr. Gathenji named Mr. Torres in the body of his DFEH complaint. Under the "particulars" of his claim, Mr. Gathenji wrote that "Rick Torres, District Manager, told me I was written and demoted for performance problems." Mr. Gathenji continues:

> I believe I was subjected to disparate treatment based on my race and national origin (African). My belief is based on the following:
>
> A. On or about 04/07 I was given two write-ups for performance problems (details on file with DFEH), non-African Managers with same performance were not reprimanded as I was.
>
> B. On or about 06/27/07 I was subjected to demotion for performance problems. Non-African Managers with same or similar performance are not demoted as I was.

Through the body of the DFEH complaint, Mr. Torres was made aware of the charges against him in the administrative proceeding. *See Martin v. Fisher*, 11 Cal. App. 4th 118, 123 (1992). Accordingly, defendants' exhaustion argument fails.

### Punitive Damages

To recover punitive damages, Mr. Gathenji must establish "through clear and convincing evidence" that defendants acted with "oppression, fraud, or malice." Cal. Civ. Code section 3294. "Clear and convincing evidence" is evidence "sufficient to support a finding of high probability." *Waits v. Frito-Lay, Inc*., 978 F.2d 1093 (9th Cir. 1992). "The evidence must be so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind." *Harbison v. American Motorists Ins. Co.*, 636 F. Supp. 2d 1030 (E.D. Cal. 2009). The "clear and convincing" evidentiary standard for punitive damages under California law applies to every stage of the litigation

process, including summary adjudication. *Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1219 (C.D. Cal. 2002); *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004 (2009). "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful or conscious disregard for the rights and safety of others." Cal. Civ. Code sec. 3294(c)(1). "Oppression" is defined as "despicable conduct that subjects a person to cruel and unusual hardship in conscious disregard of that person's rights." Cal. Civ. Code sec. 3294(c)(2). "Used in its ordinary sense, the adjective 'despicable' is a powerful term that refers to circumstances that are 'base,' 'vile' or contemptible.'" *Shade Foods v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 890 (2000).

Although Mr. Gathenji raises issues of fact as to his discrimination claim, he fails to carry his burden to establish his demand for punitive damages. The evidence is not "so clear as to leave no substantial doubt" that Mr. Torres acted with intent to cause injury to Mr. Gathenji, or acted with a conscious disregard for Mr. Gathenji's rights. When viewed in a light most favorable to Mr. Gathenji, the evidence demonstrates that Mr. Torres treated Mr. Gathenji differently and unfairly. When viewed under a heightened standard, however, the Court cannot find that the evidence is "sufficiently strong to command the unhesitating assent of every reasonable mind." The Court cannot find that the "nasty comment" is basis for exemplary damages. Mr. Gathenji does not state the content of the "nasty comment" and does not know the content. Moreover, Mr. Torres denies making the "nasty comment." Thus, a finding of discriminatory motive based on race or ethnic origin requires the fact-finder to take an inferential leap and make a credibility finding favorable from Mr. Gathenji. Such a determination is far from clear. In addition, while Mr. Gathenji and other store managers submit evidence as to Mr. Torres' disparate treatment of Mr. Gathenji, defendants offer evidence by Mr. Torres and other store managers to the contrary. Moreover, Mr. Gathenji does not dispute that he received failing loss prevention audits and does not dispute the basis for those failures. Mr. Gathenji admits, for example, that he failed to sign fully the reports and that there were items out of place in his overstock. Thus, Mr. Gathenji does not submit that Mr. Torres fraudulently failed him; he argues that Mr. Torres was more lenient with others and overlooked other store managers' deficient performance. Under these circumstances, a fact-finder may find reasonably that Mr. Torres acted without racial animus and with a non-discriminatory, business purpose to demote

Mr. Gathenji.  Simply put, while Mr. Gathenji raises questions of fact as to his discrimination claims, he fails to establish a "high probability" that he will recover on them.  Accordingly, Mr. Gathenji may not pursue an award for punitive damages.

**CONCLUSION**

For the foregoing reasons, this Court:

1.    GRANTS summary adjudication in favor of defendants and against Mr. Gathenji on Mr. Gathenji's claims for:

    a.    harassment in violation of Title VII (third cause of action) and FEHA (ninth cause of action);

    b.    retaliation in violation of Title VII (fourth cause of action) and FEHA (tenth cause of action);

    c.    failure to prevent harassment (eighth cause of action); and

    d.    punitive damages; and

2.    DENIES summary adjudication as follows:

    a.    Mr. Gathenji's claims for discrimination: race discrimination in violation of Title VII (first cause of action); national origin discrimination in violation of Title VII (second cause of action); race discrimination in violation of 42 U.S.C. §1981 (fifth cause of action); race discrimination in violation of California's FEHA (sixth cause of action); and national origin discrimination in violation of FEHA (seventh cause of action);

    b.    Mr. Gathenji's failure to prevent discrimination claim (eighth cause of action); and

    c.    based on defendants' failure to exhaust argument.

IT IS SO ORDERED.

Dated:    **March 9, 2010**                              **/s/ Lawrence J. O'Neill**
                                                 UNITED STATES DISTRICT JUDGE

23